1

2

3

O

4

5

JS - 6

6

7

8               UNITED STATES DISTRICT COURT

9               CENTRAL DISTRICT OF CALIFORNIA

10

11   ULTRASYSTEMS ENVIRONMENTAL,  )   Case No. CV 13-08787 DDP (SHx)
     INC., a California           )
12   corporation,                 )   **ORDER GRANTING DEFENDANT'S MOTION**
                                   )   **TO DISMISS**
13                  Plaintiff,     )
                                   )   [Dkt. No. 33]
14       v.                        )
                                   )
15   STV, INC., a California       )
     Corporation; CALIFORNIA HIGH  )
16   SPEED RAIL AUTHORITY, a       )
     State of California           )
17   Governmental Authority,       )
                                   )
18                  Defendant.     )
                                   )
19   _____   )

20

21       Presently before the court is Defendant STV, Inc. ("STV")'s

22   Motion to Dismiss Plaintiff's First Amended Complaint. (Dkt. No.

23   31.)  Having considered the parties' submissions, the court grants

24   the motion and adopts the following order.

25   **I.   Background**

26       The California High Speed Rail Authority ("CHSRA") is

27   responsible for designing and constructing a network of high-speed

28   passenger trains in California. (FAC ¶ 3.)  To this end, in 2006,

1  CHSRA issued a request for environmental impact reports for the

2  planned Los Angeles - Orange County segment.  (FAC ¶ 9.)

3      Defendant STV, Inc. ("STV") was hired by CHSRA as a

4  consultant, and thus became a prime contractor.  (Motion to Dismiss

5  at 1.)  The contract between STV and CHSRA (the "Prime Agreement")

6  required STV to perform "preliminary engineering and project-

7  specific environmental work".  (FAC ¶ 11; Mot. at 3.)  The Prime

8  Agreement's compensation and payment provisions stated that

9  "[p]ayment will be made in accordance with, and within the time

10  specified in, [California] Government Code Chapter 4.5, commencing

11  with Section 927."  (FAC ¶ 16b; Ex. B at 10.)

12      As part of its request for environmental impact reports, CHSRA

13  expressed its commitment to support small businesses, and asked

14  prime contractors such as STV to solicit such businesses for

15  subcontracts.  (FAC ¶ 9.)  Plaintiff in this action, Ultrasystems

16  Environmental, Inc. ("UEI"), is an environmental planning firm.

17  (Mot. to Dismiss at 1.)  It was also certified as a disadvantaged,

18  woman-owned small business.  (FAC ¶ 1.)

19      In September 2006, STV contacted Plaintiff UEI in relation to

20  a high-speed rail project subcontract.  (FAC ¶ 12.)  Plaintiff was

21  awarded the contract ("Consultant Agreement" or "subcontract") in

22  December 2006.  (FAC ¶ 12.)  According to the Consultant Agreement,

23  UEI was to provide "architectural and/or engineering consulting

24  services" related to the project.  (FAC ¶ 13.)  The subcontract

25  contemplated payment of no more than $407,178 to UEI, absent STV's

26  prior written consent.  (FAC, Ex. A at 3.)  The subcontract also

27  stated that "[a] copy of the Prime Agreement, including [UEI]'s

28  responsibilities and timing of services hereunder -, is

1  incorporated by reference into this Agreement and attached as

2  exhibit 'A'.'"  (FAC ¶ 16; Ex. A at 1.)

3     Plaintiff began work on the project in 2007, shortly after

4  entering into the Consultant Agreement with STV.  On November 25,

5  2009, STV issued a stop-work order.  (FAC ¶ 14.)  Up to that point,

6  STV had paid Plaintiff $4.5 million for work completed.  (Mot. at

7  9, n.1.)  The gravamen of the complaint is that Defendant owes

8  Plaintiff in excess of $2 million, representing penalties for late

9  payments.  (FAC ¶ 21.)  Defendant STV now moves to dismiss.

10  **II.  Legal Standard**

11     A complaint will survive a motion to dismiss when it

12  "contain[s] sufficient factual matter, accepted as true, to state a

13  claim to relief that is plausible on its face." Ashcroft v. Iqbal,

14  129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly,

15  550 U.S. 544, 570 (2007)).  When considering a Rule 12(b)(6)

16  motion, a court must "accept as true all allegations of material

17  fact and must construe those facts in the light most favorable to

18  the plaintiff." Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir.

19  2000).  Although a complaint need not include "detailed factual

20  allegations," it must offer "more than an unadorned,

21  the-defendant-unlawfully-harmed-me accusation." Iqbal, 129 S. Ct.

22  at 1949.  Conclusory allegations or allegations that are no more

23  than a statement of a legal conclusion "are not entitled to the

24  assumption of truth." Id. at 1950.  In other words, a pleading

25  that merely offers "labels and conclusions," a "formulaic

26  recitation of the elements," or "naked assertions" will not be

27  sufficient to state a claim upon which relief can be granted. Id.

28  at 1949 (citations and internal quotation marks omitted).

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." Id. at 1950.   Plaintiffs must allege "plausible grounds to infer" that their claims rise "above the speculative level." Twombly, 550 U.S. at 555-56. "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950.

## III. Discussion

A.   Section 927

The thrust of Plaintiff's First Amended Complaint is that Defendant breached its contractual obligations by failing to make prompt payments, in violation of California Government Code § 927 – the California Prompt Payment Act.   (FAC ¶ 19.)   Section 927 states, in relevant part:

> (b)   It is the intent of the Legislature that state agencies pay properly submitted, undisputed invoices, refunds, or other undisputed payments due to individuals within 45 days of receipt or notification thereof, or automatically calculate and pay the appropriate late payment penalties as specified in this chapter.
> (c)   Notwithstanding any other provision of law, this chapter shall apply to all state agencies . . . .

Cal. Gov. Code § 927 (emphasis added).

The subcontract between STV and Plaintiff makes no reference to payment deadlines or to Section 927.   However, the Prime Agreement, entered into by the CHSRA and STV, does state that payment will be made in accordance with Section 927.   (FAC, Ex. B at 10.)   Plaintiff UEI asserts that Section 927's 45-day deadline applies not only to payments from the CHSRA to STV, but also from

4

1   STV to Plaintiff because the subcontract incorporates the Prime

2   Agreement into the Consultant Agreement by reference.  Plaintiff

3   also points to the subcontracting provisions of the Prime

4   Agreement, which state that "[a]ny subagreement in excess of

5   $25,000, entered into as a result of this Agreement, shall contain

6   all the applicable provisions stipulated in this Agreement."  (FAC,

7   Ex. B at 13.)  In so doing, Plaintiff appears to suggest that the

8   subcontract, which unquestionably exceeded $25,000, necessarily

9   incorporated Section 927, its deadlines, and statutory penalties.

10      Plaintiff's contentions have no merit.  The plain language of

11  Section 927 makes clear that it is applicable to state agencies.

12  Cal. Gov. Code § 927(c) ("Notwithstanding any other provision of

13  law, this chapter shall apply to state agencies . . . .".)  The

14  Prime Agreement's reference to Section 927 is in no way

15  "applicable" to the Consultant Agreement between private entities

16  UEI and STV.  For that same reason, the subcontract's incorporation

17  of the Prime Agreement, to the extent such incorporation includes

18  Section 927, simply has no bearing on the relationship between UEI

19  and STV or the payment obligations owed by the latter to the

20  former.  See Voices of the Wetlands v. State Water Resources

21  Control Board, 52 Cal.4th 499 (2011) ("When interpreting statutes,

22  we begin with the plain, commonsense meaning of the language used

23  by the Legislature.  If the language is unambiguous, the plain

24  meaning controls." (internal citation omitted).[1]  Plaintiff offers

25  ─────────────────────

26  [1]

27  The inapplicability of the 45-day deadline to prime
    contractors with respect to subcontractors is further
28  illustrated by California Government Code § 927.10, which
                                              (continued...)

1   no authority for the proposition that Section 927, which plainly

2   refers only to state agencies, is in any way applicable to private

3   entities.

4       Plaintiff also contends that Section 927's timing and penalty

5   provisions apply to STV because portions of the "Manner and Times

6   of Payment" section of the subcontract are ambiguous.  Article 5.1

7   of the Consultant Agreement provides for monthly progress payments

8   from STV to Plaintiff, following Plaintiff's monthly progress

9   reports and invoices to STV and STV's subsequent application to the

10  CHSRA for payment.  (FAC, Ex. A at 3.)  Article 5.3 of the

11  subcontract states that STV will pay Plaintiff within 15 days of

12  receipt of payment from the CHSRA on the invoices provided by

13  Plaintiff.  (Id.)  Though Plaintiff is correct that ambiguities in

14  a contract are resolved against the drafter, that principle does

15  not serve Plaintiff here.  See, e.g. J.Alexander Securities, Inc.

16  v. Mendez, 17 Cal.App.4th 1083, 1094 (1993).  There does not appear

17  to be any inherent tension between Articles 5.1 and 5.3, which

18  essentially, respectively, set out invoice and payment schedules.

19      Furthermore, even if an ambiguity did exist, resolution of

20  that ambiguity in Plaintiff's favor would not somehow import

21

22          [1](...continued)
        reads, "State agencies shall encourage claimants to promptly

23      pay their subcontractors and suppliers, especially those that
        are small businesses. In furtherance of this policy, state

24      agencies shall utilize expedited payment processes to enable
        faster payment by prime contractors to their subcontractors

25      and suppliers, and shall promptly respond to any
        subcontractor or supplier inquiries regarding the status of

26      payments made to prime contractors."  While the statute seeks
        to encourage and facilitate "faster" payment, it does not

27      impose any specific deadlines or requirements upon private
        contractors.

28

                                    6

Section 927's deadlines and penalties or make them applicable against a private entity.  The nature of the supposed ambiguity is not clear to the court.  Plaintiff's opposition asks, "If [Plaintiff] invoiced STV for a progress payment was that an 'invoice' or a 'progress payment'?  If a 'progress payment,' [Plaintiff] should have been paid monthly."  (Opposition at 5.)  The Opposition then, however, makes a logical leap and contends that if STV failed to make a timely monthly progress payment, Section 927 (which, the court notes, includes a 45-day payment period longer than that contemplated by Article 5 of the subcontract) should apply.  (Id.)  Ambiguities in contractual language exist only when there are multiple reasonable interpretations of the contract's terms.  See Transport Ins. Co., v. Superior Court, 222 Cal.App.4th 1216, 1221 (2014).  Article 5 makes no reference to Section 927 or payment penalties of any sort.  Any interpretation of Article 5 of the subcontract that would import the language of Section 927 and make its deadlines and penalties applicable to a private entity is unreasonable.  Any ambiguity in Article 5 does not, therefore, entitle Plaintiff to the relief it seeks.

Lastly, Plaintiff points to Article 5.4, which states that STV was not obligated to pay Plaintiff for any work "unless and until" STV received payment from the CHSRA.  (FAC, Ex. A at 3-4.)  Plaintiff contends that this language constitutes both an unenforceable "pay if paid" clause and a potentially enforceable "pay when paid" clause.  (Opp. at 6.)  See Capitol Steel Fabricators, Inc. v. Mega Construction Co., 58 Cal.App.4th 1049, 1058 (1997).  Plaintiff argues that if the former, "paragraph 5.4

. . . falls out leaving [Section 927] to fill the void," and if
the latter, "the incorporation by reference of the . . . Prime
Agreement put STV in the position of having to pay . . . within
the time specified in [Section 927]." (Opp. at 6.) As discussed
above, this argument is meritless. Plaintiff provides no
authority or reasoning to explain why Section 927, which applies
to state agencies, would fill any potential void left by
unenforceable "pay if paid" language. Regardless whether Article
5.4 is enforceable in whole or in part, Section 927 does not apply
to STV.[2]

B.   Futility of Amendment

Plaintiff asserts in its Opposition that, if granted leave to
amend, it would allege a claim based on Defendant's breach of "its
duty to collect prompt payment penalties from the State and share
those penalties pro rata with Plaintiff." (Opp. at 12.)
Plaintiff contends that the Consultant Agreement "imposed upon
[Defendant] a duty of good faith and fair dealing to pursue
collection of prompt payment penalties from the State for the
State's failure to comply with Section 927 et seq." (Opp. at 2.)

"The implied covenant of good faith and fair dealing does not
impose substantive terms and conditions beyond those to which the
parties actually agreed." Avidity Partners, LLC v. State, 221
Cal.App.4th 1180, 1204 (2013). Plaintiff does not identify any
portion of the subcontract that obligated STV to seek prompt
payment penalties from the CHSRA, let alone to share any such

_____

[2]

The court also notes that Plaintiff does **not** allege that
it was not paid.

penalties pro rata with subcontractors.  Rather, the subcontract explicitly stated that STV would pay UEI within fifteen days of receipt of payment from the CHSRA, and that UEI expressly assumed the risk that it would not be paid for any work completed, but not paid for by the CHSRA.[3]  (FAC, Ex. A at 3-4.)  Amendment of the FAC to include a claim for breach of the covenant of good faith and fair dealing would, therefore, be futile.  Accordingly, dismissal with prejudice is warranted.  See Carrico v. City & County of San Francisco, 656 F.3d 1002, 1008 (9th Cir. 2011).

**IV.   Conclusion**

    For the reasons stated herein, Defendant STV's Motion to Dismiss is GRANTED.  The First Amended Complaint is DISMISSED, with prejudice.

IT IS SO ORDERED.

Dated: January 15, 2015

                                        DEAN D. PREGERSON
                                        United States District Judge

---

[3]

    As discussed above, any question regarding the enforceability of this "pay if paid" language is distinct from questions regarding the applicability of Section 927.

9